In the Matter of the Estate of FREEMAN J. FITHIAN, Deceased.

*Accounting by an executor of an executor — power of the surrogate to compel it.*

A surrogate has power under section 2606 of the Code of Civil Procedure, as amended by chapter 399 of 1884, to compel an executor of another executor to account for property received by the latter.

The purpose of the amendment is to develope all that the executor of the executor knows or can learn about the trust estate and in reference to it.

Its design is also to vest the power in the surrogate to enforce the delivery of the trust estate remaining.

APPEAL from an order of the surrogate directing that an amended account be filed.

*G. W. Cotterill*, for Mary J. Clark, executrix, appellant.

*Horace Secor, Jr.*, for Harriet A. Fithian, petitioner, respondent.

BRADY, J.:

The question presented by this appeal is whether the surrogate has the power, under section 2606 of the Code, to compel an executor of another executor to account for property received by the latter. The learned surrogate has declared in the affirmative of this inquiry, and his conclusions are based upon the amendment of the section by chapter 399 of the Laws of 1884. He had prior to that change in a series of decisions held the negative, save to the extent that the representative of the deceased executor had come into possession of assets belonging to the trust estate. (See opinion herein and cases cited.*)

---

* ROLLINS, S.— The will of this decedent, who died on August 4, 1884, named Lemuel B. Clark as its executor. Mr. Clark was granted letters testamentary on October 15, 1884. He died on June 9, 1886, having rendered no account of his

The section, prior to the amendment, was as follows:

"SECTION 2606. Accounting by executor, etc., of deceased executor.

"Where an executor, administrator, guardian or testamentary trustee dies, the Surrogate's Court has the same jurisdiction upon the petition of his successor, or of a surviving executor, administrator or guardian, or of a creditor or person interested in the estate, or of a guardian's ward, to compel the executor or administrator of the decedent to account for and deliver over any of the trust property which has come to his possession or is under his control which it would have as against the decedent if his letters had been revoked."

By the amendment the words "for and deliver over any of the trust property which has come to his possession or is under his control" were not omitted, but transposed, as we see. This removed the limit or restriction which existed, and provided for a general accounting, such as might, under sections 2603, 2605, be enforced

---

administration. He left a will of which his widow, Mary J. Clark, is executrix. She qualified as such on July 7, 1886. On the succeeding day a proceeding was instituted in this court by Mrs. Harriet J Fithian, widow of the testator and beneficiary under his will, for an order requiring Mrs. Clark, as executrix of her late husband's estate, to render and settle his account as Mr. Fithian's executor. On October 14, 1886, the respondent filed an account, the scope and character whereof are indicated by its opening sentence, which is as follows: "I, Mary J. Clark, executrix of Lemuel B. Clark, deceased, who was himself executor of Freeman J. Fithian, deceased, do hereby account for all money and other property *received by me as such executrix* belonging to the estate of the said Freeman J. Fithian, deceased.

It is insisted on behalf of the petitioner that by virtue of section 2606 of the Code of Civil Procedure (and it is upon that section that the present proceeding is founded) she is entitled to an accounting from this respondent, not only as regards all money and property of the testator's estate which have come to the respondent's hands, but also as regards all such money and property as came at any time to the hands of the respondent's late husband.

I had occasion, in several reported cases which arose before the enactment of chapter 399 of the Laws of 1884, to consider the extent of the surrogate's authority to require the executor or administrator of a decedent A, who had acted in his lifetime as the executor or administrator of a decedent B, to account for A's dealings with B's estate. (*Le Count* v. *Le Count*, 1 Dem., 29; *Maze* v. *Brown*, 2 id., 217; *Murray* v. *Vanderpoel*, Id., 311; *Bunnell* v. *Ranney*; Id., 327.)

In the cases just cited it was held that such accounting could be insisted upon

against an executor whose letters had been revoked — a general accounting, and not confined to the trust property which had come to his possession or under his control. The amendment contained other provisions, as follows: "With respect to the liability of sureties, in and for the purpose of maintaining an action upon the decedent's official bond, a decree against his executor or administrator, rendered upon such an accounting, has the same effect as if an execution issued upon a surrogate's decree against the property of decedent had been returned unsatisfied during decedent's lifetime. So far as concerns the executor or administrator of decedent, such a decree is not within the provisions of section 2552 of this act. The Surrogate's Court has also jurisdiction to compel the executor or administrator at any time to deliver over any of the trust property which has come to his possession or is under his control, and if the same is delivered over after a decree the court must allow such credit upon the decree as justice requires."

The learned counsel for the appellant contends that they do not

---

only to the extent that the representative of the deceased executor or administrator had come into possession of assets belonging to the estate of such deceased executor's or administrator's decedent. These limitations were removed by the act of 1884 above referred to, and section 2606 was so amended as to provide that "where an executor, administrator, guardian or testamentary trustee dies, the Surrogate's Court has the same jurisdiction, upon the petition of his successor, * * * to compel the executor or administrator of the decedent (that is, of such deceased executor or administrator) to account which it would have against the decedent (such deceased executor or administrator meaning) if his letters have been revoked by a surrogate's decree."

Now, in the present case, if this respondent's testator were alive he could be required, even though his letters testamentary had been revoked, to account for his entire administration of this estate. And such an account is precisely what may be required of his executrix, i. e., an account of her husband's administration from the day of his appointment until his death. The only important practical change effected by the act of 1884 is one that relates purely to methods of procedure. But for that act the course which any person interested as legatee in the estate of this decedent would be obliged to pursue, in bringing about an adjustment of the claims of such estate upon the estate of the testator's deceased executor, Clark, would have been that which is pointed out in the cases above cited. The new statute has provided a shorter and simpler method of adjustment. I must, therefore, sustain the petitioner's objection that the account of the respondent is, on its face, incomplete. It may be amended, and after amendment the petitioner will be allowed to file new objections.

show an intention to require the executor to account for any property other than that received by him, and that the intention of the legislature, to be deduced from this and other sections, is to compel the delivery of such property at any time, even after a decree, and that but one decree only was contemplated by the section, which was a decree to deliver. There are, it is true, some reasons to support the contention, but the transposition of the words, to which particular attention has been called, seems to warrant the thought that it was intended to develop all that the representative executrix knew or could learn about the trust estate, and in reference to it, if circumstances demanded the exercise of the power, to compel the delivery of any part of it which has reached the hands of the representative executor, or is under his control, although not developed by the accounting, or until after a decree based upon such accounting. The design to enlarge the sphere of the accounting seems to be apparent from the context by which it is declared that so far as concerns the representative executor, the decree rendered upon such an accounting with respect to the liabilities of the sureties is not within the provisions of section 2552 of the Code, that is to say, shall not be conclusive evidence that there are sufficient assets in his hands to satisfy the sum which the decree directs him to pay, or for which the order permits the execution to issue. The surrogate may, upon the accounting, determine what the representative executor owes to the trust, but the decree shall not be evidence conclusive that the representative executor has the assets to pay. It is, therefore, a proceeding in the nature of an investigation, based upon the proposition that the representative executor having succeeded to the property and papers of the decedent, whom he represents, must be in a condition to furnish the best information in regard to the trust estate. It does not impose any liability upon him beyond the property he has of the trust estate, and should not in the nature of the relation he holds to the decedent. Its design is also to invest the power in the surrogate to enforce the delivery of the trust estate remaining. This is the effect of the transposition of the words particularly noted and is a gift of authority. It is suggested that the view expressed by the surrogate is in contravention of the Revised Statutes, which declare that "an executor of an executor shall have no authority to

commence or maintain any action or proceeding relating to the estate, effects or rights of the testator of the first executor, or to take any charge or control thereof as such executor." (3 R. S. [7th ed.], 2395, § 11.)

But, with great respect, it is thought this does not affect the question which relates to existing things; not what is to be gathered in or received, but what was found of the trust estate and possession taken either formally or informally, and what is the condition of the estate as far as it may be known and disclosed. The law does not seek to create impossibilities, and when an account is sought all that can be required is what is known, not what may be conjectured. The provisions of the Revised Statutes prohibiting the interference of an executor of an executor with the unadmistered estate of the first executor (2 R. S., 71, §§ 11, 17; 3 R. S. [7th ed.] 2395; Id., 2292, § 60) are not inconsistent or in conflict with the authority conferred upon the surrogate, which is given, as already said, to secure the exposition of the trust estate, so far as it may be, and its delivery to the proper persons. Statutes creating summary remedies unknown theretofore are often regarded by practitioners as questionable in policy and uncertain in their construction and application; but this is the epoch of innovation, and all seeming incongruities in our legal system are sought to be remedied by legislation, which, gently blending with prevailing laws, produces greater harmony and simplicity in the administration of justice. The object in view thus suggested is not always accomplished, for sometimes confusion worse confounded is the outcome. The section under consideration is not free from criticism, but it is thought it works out the problem for which it was amended, and that its interpretation by the surrogate was correct.

Ordered accordingly, but as the question is new only the disbursements of the appeal are allowed to the respondent.

VAN BRUNT, P. J., and DANIELS, J., concurred.

Order affirmed, with the disbursements to the respondent.